DANIEL BACON *vs.* ALMOND WILLIAMS & another.

A witness who had been for many years a photographer, and previously " a teacher of the branches usually taught in select schools," including handwriting, was permitted to state his opinion whether certain words on a paper shown him were written before or after the paper was folded. *Held,* that the admission of this evidence was no ground of exception.

A disputed signature cannot be used in cross-examination of a witness to test his accuracy as to another signature.

The rejection of a plan, offered in evidence after all the testimony on both sides is closed, is within the discretion of the presiding judge, and not subject to exception.

ACTION OF CONTRACT on a promissory note for $300, made by Almond Williams and Avery Williams to the plaintiff. Answer, payment.

At the trial in the court of common pleas, at December term 1858, before *Mellen,* C. J., the defendants gave in evidence a receipt in these words : " Received of Avery Williams three hundred dollars, for a note against Almond in the hands of Brimblecom. Barre, March 17th 1857. Daniel Bacon."

The plaintiff contended that the receipt was in whole or in part a forgery, and among other witnesses called Albert S. Southworth as an expert, who was examined as to his qualifications and competency as an expert, and on said examination testified " that his occupation was photographing, in which he had been engaged since 1840; that previously to that time he had been a teacher of the branches usually taught in select schools, and, as a teacher, had attended to handwriting ; that he had given attention to a comparison of fine and coarse lines, and to an examination of colors ; that he had been unable to photograph the receipt exhibited, in the time he had had ; but had examined the receipt with a magnifying glass." The presiding judge decided that the witness was not qualified to testify as an expert to his opinion of the genuineness of the receipt by a comparison merely of handwriting ; but, against the defendant's objection, allowed him to testify " as to his opinion whether the words ' Daniel Bacon ' were written before the

paper was folded; and that the word 'for' was written after it was folded, because, where the letters forming those words crossed the fold in the paper, the ink had spread into the fibres of the paper broken by the folding of the paper, and, in his opinion, where it crossed the fold the ink had spread in the fold;" and also allowed him to testify "in relation to the various words and letters, the way in which the letters were formed, their appearance and the peculiarities observed by him, as to where the pen was taken off, as to the angles in the letters and a stiffness in a portion of the handwriting;" and to state his opinion as to the ink with which the body of the note was written, as compared with the ink in the signature and date.

James W. Jenkins, a witness professing familiarity with the handwriting of Bacon, and called by the plaintiff, having testified as to the handwriting of the receipt, was asked by the defendants on cross-examination, to test his accuracy and judgment, whether a certain paper, alleged by the defendants, but not admitted by the plaintiff, to have been written by Bacon, was in his opinion the handwriting of Bacon. But the judge excluded the evidence; and ruled, that a paper which had not been proved to be genuine could not be introduced merely as a test of the witness's accuracy.

The defendants offered evidence tending to show that they with others were in the north middle room of Bacon's house on the 17th of March, 1857. To rebut this evidence, the plaintiff introduced several witnesses, who testified that they were at Bacon's house on portions of that day, and did not see either of the defendants there; these witnesses did not state definitely in what room or part of the house they were, and there was no evidence that they were in the north middle room; but their testimony tended to show that some of them were in different rooms, and that one or more of them were in the same room with Bacon nearly the whole of the forenoon and afternoon of that day. At the close of the plaintiff's rebutting evidence, the defendants, in order to explain any apparent contradiction, offered to introduce a plan of the house, showing the different rooms and their location. But the court refused to admit it.

The jury returned a verdict for the plaintiff, and the defend-
ants alleged exceptions.

*F. H. Dewey & W. A. Williams*, for the defendants. 1. South-
worth's testimony should have been rejected. He had not the
requisite skill and experience in the examination of feigned and
simulated handwriting, and in detecting forgeries, to qualify
him as an expert. And his testimony related to matters equally
within the knowledge of the jury. *Moody* v. *Rowell*, 17 Pick.
490. *Page* v. *Homans*, 14 Maine, 478. *Commonwealth* v.
*Webster*, 5 Cush. 302. *Mulry* v. *Mohawk Valley Ins. Co.*
5 Gray, 541.

2. In the cross-examination of Jenkins, the defendants had a
right to test his accuracy by calling his attention to writing not
then proved or admitted to be Bacon's handwriting. *Page* v.
*Homans*, 14 Maine, 478. *Younge* v. *Honner*, 1 Car. & K. 51.

3. The defendants should have been permitted to introduce
the plan, in order to explain to the jury that the defendant could
have been in the north middle room, and yet not have been seen
by the plaintiff's witnesses.

*P. E. Aldrich*, for the plaintiff.

Bigelow, J. We can see no valid objection to the compe-
tency of the evidence which the court permitted the witness
Southworth to give as an expert. The capacity of a witness
to enlighten a jury on a matter of science or skill, or on a sub-
ject beyond the common experience of men, can be best esti-
mated by the judge who presides at the trial of a cause ; and
this court would be slow to revise a ruling on such a question,
unless the error was very plain and palpable.

2. The rule, as now settled in this commonwealth, concern-
ing the competency of evidence resulting from a comparison of
a signature in dispute, with other signatures of the same party,
requires that the handwriting used as a standard of comparison
should be first established by direct proof of the signature, or
other equivalent evidence. *Commonwealth* v. *Eastman*, 1 Cush.
217. *Martin* v. *Maguire*, 7 Gray, 178. This is necessary in
order to avoid collateral issues, which would tend to distract the
minds of jurors from the precise question before them. The

same rule is applicable, for the same reason, when a signature not proved is offered for the purpose of testing the accuracy of a witness. Until the jury have first settled whether the signature offered to a witness for his judgment is true or false, they can form no opinion as to his accuracy. If disputed signatures were admissible for the purpose of trying the correctness of the opinions of witnesses, a collateral inquiry would be raised concerning each signature so offered, and a case might be filled with issues aside from the real question before the jury. In the present case, the signature offered to the witness was neither proved nor admitted to be in the handwriting of the plaintiff, nor did the defendant propose to show that it was his genuine signature. The evidence was therefore rightly excluded.

3. The question as to the introduction of the plan, after all the evidence on both sides of the case had been put in, was entirely within the discretion of the judge who tried the case.

*Exceptions overruled.*